UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY LENTZ,
        Plaintiff,                                CIVIL ACTION NO. 12-12037

                                                    DISTRICT JUDGE DAVID M. LAWSON

        v.                                    MAGISTRATE JUDGE MARK A. RANDON

ROBERT LOXTON, et al.,
        Defendants.
_____/

## SECOND REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 34, 56)

**I.    INTRODUCTION**

After Michigan prisoner Gary Lentz disobeyed a Corrections Officer's direct order to stop kicking his cell door, a restraint team was mobilized outside of his cell. The restraint team's supervisor twice ordered Lentz to step to his cell door to be restrained. He refused, and a chemical agent was sprayed into his cell. After three more directives failed to persuade Lentz to voluntarily submit and be handcuffed, the restraint team made entry and – in 98 seconds – forcibly subdued, restrained, and removed him from his cell. Lentz was injured in the process.

Lentz subsequently filed this 42 U.S.C. § 1983 suit, *pro se*, against the members of the restraint team and several non-participating supervisory officials. He alleges they violated the Eighth Amendment's prohibition of cruel and unusual punishment and state law. He also alleges that two nurses failed to provide proper medical care for his injuries, and that he has suffered retaliation.

Defendants' motions for summary judgment are pending (Dkt. Nos. 34, 56). The issues raised have been fully briefed (Dkt. Nos. 43, 57). Lentz also filed a supplemental brief after

1

reviewing the video-recording of the incident (Dkt. No. 104).[1] The Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

Because the restraint team's use of force was reasonable and necessary to restore discipline; the non-participating supervisory personnel cannot be vicariously liable; and, Nurse Bettina Wells was not deliberately indifferent to Lentz's medical needs, this Magistrate Judge **RECOMMENDS** that Robert Loxton, Alan Gregory, Antwan Oden, Jaarih Cosby, Nurse Wells, Kenneth Romanowski, Daniel Heyns, Shane Jackson, Darrell Steward, and Douglas Weberg's motions for summary judgment be **GRANTED** and Lentz's claims be **DISMISSED WITH PREJUDICE** as to those Defendants as well as Haven Bivens.[2]

## II. BACKGROUND

### A. *Identification of Defendants*

The restraint team forcibly removed Lentz from his cell in the segregation unit of the Macomb Correctional Facility ("MRF") on October 6, 2011 (Dkt. No. 34 at p. 4).[3] The entire incident, including Lentz's initial medical evaluation, was videotaped.[4]

---

[1] Lentz also filed grievances to support his responses to Defendants' motions for summary judgment (Dkt. No. 78). This Magistrate Judge construes Lentz's motion to take judicial notice of the grievances (Dkt. No. 81) as a motion to consider them part of the record. As such, Lentz's motion is **GRANTED**.

[2] Although Haven Bivens has not been served, this Magistrate Judge finds it would be futile and an uneconomical use of judicial resources to conduct further proceedings against him. As such, Lentz's claims against Bivens are included in this report and recommendation. If the Court adopts this recommendation, only Nora Kupke will remain as a defendant.

[3] All pages numbers refer to CM/ECF pagination.

[4] Lentz was not initially allowed to review the video-recording; Judge David Lawson ordered that he be provided a copy of the video and the means to review it (Dkt. No. 97). Subsequently, Lentz reviewed the video twice. Although he was not permitted to personally take notes, staff members at the prison took notes for him at his direction. Lentz filed a supplemental

Six of the defendants were on the restraint team: Sergeant Loxton was the supervisor (*Id.*); Corrections Officer ("CO") Bivens held the video camera; CO Gregory was the "Breacher"; CO Cosby was the "Arms"; CO Oden was the "Shield" (*Id.* at pp. 4-5; Dkt. No. 34, Ex. 5 at p. 2); and, Weberg was the "Legs" (Dkt. No. 34, Ex. 5 at p. 2; Dkt. No. 56 at p. 4).[5]

Nora Kupke and Bettina Wells are Registered Nurses at MRF. Kupke has not been served.[6] She evaluated Lentz after he was extracted from his cell (Dkt. No. 11 at p. 14); Wells saw Lentz two days later (Dkt. No. 34 at p. 6).

The remaining Defendants are Michigan Department of Corrections' ("MDOC") supervisors who did not participate in the cell extraction: Heyns is the MDOC's Director; Romanowski is MRF's Warden; Steward is the Deputy Warden; and, Jackson is MRF's Inspector (Dkt. No. 34 at p. 7).[7]

### B.   Factual Background

---

response to Defendants' motions on October 31, 2013.

[5]Weberg is currently a Corrections Officer at the Alger Correctional Facility in Munising, Michigan (Dkt. No. 56, Ex. 1 at ¶1).

[6]This recommendation, therefore, does not address Lentz's claims against Nurse Kupke.

[7]As explained below, Lentz's claims against Heyns, Romanowski, Steward, and Jackson lack merit. Alternatively, Lentz's claims fail because they are improperly based on supervisory liability. *Everson v. Leis*, 556 F.3d 484, 495 ("[s]ection 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees") (citation omitted); *Coates v. Gorham*, No. 1:13-cv-193, 2013 WL 3864065, at *5 (W.D. Mich. July 24, 2013) ("[Section] 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance") (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Lentz does not deny that he was kicking his cell door. But, he insists he had stopped *before* the restraint team arrived at his cell.

The restraint team did not immediately resort to chemical spray or physical force. Before taking either step, Lentz was given an opportunity to be voluntarily handcuffed and escorted – instead of forcibly extracted – from his cell:

> 1:45[8] - Loxton to Lentz: "Step to the door to be restrained."
> 1:50 - Loxton to Lentz: "Step to the door to be restrained."
> 2:10 - Loxton administers chemical spray into Lentz's cell for about seven seconds.
>
> 2:34 - Loxton to Lentz: "Step to the door to be restrained."
> 3:01 - Loxton to Lentz: "Step to the door."
> 3:04 - Loxton to Lentz: "Prisoner Lentz, step to the door."
> 3:26 - Loxton to Lentz: "Are you going to step to the door?"
> 3:49 - Restraint team enters Lentz's cell.

Lentz persisted in his refusal to voluntarily submit and be handcuffed.

After the restraint team entered his cell, Lentz alleges that Bivens, Cosby, Oden, Weberg, Gregory, and Loxton "hit [him] in [t]he [f]ace several times causing [his] nose to bleed and kicked [him] in [his] lower-left rib cage, protecting [his] heart, causing it to break above [his] heart" (Dkt. No. 11 at p. 17).[9] Lentz also claims members of the restraint team positioned themselves to "block" the assault from the camera (Dkt. No. 104 at p. 2). He was then placed in full-body restraints that made it painful to use the restroom,[10] denied a shower to wash off the

---

[8]The numbers ("__:__") denote the amount of time that elapsed on the video recording.

[9]In his response, Lentz says his ribs did not heal correctly, and his lower rib cage is "protruding upwards and outwards" on his left side (Dkt. No. 43 at p. 3 (CM/ECF)). But, Lentz's ribs were recently X-rayed (Dkt. No. 85), and the findings were normal.

[10]This Magistrate Judge is unsure about how restraints made it painful for Lentz to use the restroom. The restraint team simply put Lentz in a brown jump suit with restraints around his waist, and on his arms and legs.

chemicals, and placed in front of a giant fan that burned his eyes to the point that he could not open them (Dkt. No. 11 at p. 17).[11]

Lentz also alleges that Nurse Wells "railroaded [him] . . . and went as far as to maliciously and sadistically put a smiley face on [the] response [to his grievance]" (*Id.* at p. 18).

Approximately four months after the cell extraction, Lentz was transferred from MRF – a level two prison – to a level five maximum security prison (*Id.* at 19).

### III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require

---

[11] The video-recording shows that while the chemical agent caused Lentz's eyes to burn and initially made it difficult for him to open his eyes – after standing in front of the fan for approximately four minutes – Lentz is shown in his cell with his eyes open.

submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

## IV. ANALYSIS

### A. *Cruel and Unusual Punishment*

Lentz argues that Loxton, Gregory, Weberg, Oden, Cosby, and Bivens violated the Eighth Amendment's prohibition of cruel and unusual punishment when they used excessive force during the cell extraction. The United States Supreme Court has instructed courts on how to analyze these claims:

> [W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.
>
> \*   \*   \*
>
> In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the reasonable officials, and any efforts made to temper the severity of a forceful response . . . .

*Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal citations and quotations omitted).

After reviewing the video-recording of the cell extraction, this Magistrate Judge agrees with Defendants and finds – as a matter of law – that the restraint team used reasonable force, in good faith, to restore discipline. The recording shows that Loxton gave Lentz two commands to "step to [his cell] door to be restrained." Lentz ignored the commands. Approximately 25

seconds later, Loxton sprayed Lentz with a chemical agent. Loxton then waited approximately 23 seconds before giving Lentz four more verbal orders to "step to [his cell] door to be restrained." Lentz did not comply. Approximately one minute and 16 seconds later, the restraint team entered Lentz's cell. They subdued, restrained, and removed Lentz from his cell in 98 seconds (cell entry 3:49; cell exit 5:27).

In sum, the restraint team gave Lentz approximately two minutes and four seconds to step to his cell door and be restrained before they performed a cell extraction. As such, it was Lentz's conduct – in ignoring Loxton's commands – that necessitated the use of force. Lentz's supplemental response challenges the purportedly inconsistent reasons Defendants gave him for coming to his cell (i.e., self-destructive behavior versus causing a disturbance). But, he does not – nor can he – dispute that he refused Loxton's commands to approach his cell door and be restrained. The video-recording shows the use of force was appropriate and necessary to get Lentz to submit and belies his claim of a vicious beating.[12] There is no evidence that Lentz was "power-kicked in the ribs"; his recent rib X-rays show no sign of fracture. And, at least one member of the restraint team is heard saying "stop resisting." Finally, Lentz was taken to the segregation shower immediately after he was restrained; the restraint team removed his contaminated clothing and provided him with a clean jump suit.[13] *See Burman v. Streeval*, No. 4:11CV0569, at *5 (N.D. Ohio Aug. 11, 2011):

---

[12]Because Lentz refused to be voluntarily handcuffed, the COs did not know whether Lentz possessed or could gain access to a weapon.

[13]Lentz was not permitted to shower at the time; assuming a shower would have helped and not aggravated his condition, Nurse Kupke promptly evaluated Lentz and medically cleared him to return to his cell.

> [e]ven liberally construed, [p]laintiff's allegations do not suggest a malicious, sadistic, or wanton infliction of pain. The prison officials made several verbal requests for [p]laintiff to wake and move so that they could verify he was, in fact, under the blanket. [The] [p]laintiff ignored the officers. They waited for two hours for him to comply but he did not respond to their demands. When the confrontation avoidance measures were not successful, the officials utilized tear gas, and placed him in handcuffs and shackles. He was taken to the showers where his clothing was cut off. He contends he was taken to a dry cell where he was kept, still in the restraints until around 2:00 p.m. While [p]laintiff contends he was "roughly handled," he does not allege he suffered any physical injury. He does not describe wanton or malicious conduct that can only be characterized as an unjustified infliction of harm.

*See also Knuckles El v. Koskinen*, 1998 WL 415847, at *2 (6th Cir. June 16, 1998) (dismissing plaintiff's Eighth Amendment claim of excessive force as frivolous when plaintiff was sprayed with gas only after he refused to allow the officer to place him in restraints); *Banks v. Meck*, No. 13-1906, ___ F. A'ppx ___, 2013 WL 3802288, at *5 (3rd Cir. July 23, 2013) (use of chemical spray after repeated orders to evacuate cell and subsequent forcible removal after the spray had "no apparent effect" did not violate the Eighth Amendment). As the court held in *Patton v. Byrd*, No. 3:07-cv-456, 2011 WL 1002789, at **6-7 (E.D. Tenn. March 18, 2011):

> [T]he videotaped recording of the cell extraction controverts plaintiff's allegations and corroborates the defendants' testimony. There is nothing in the record, other than plaintiff's self-serving allegations, to support his claim that he was assaulted by the defendants[.]
>
> When considering a motion [for] summary judgment, the court must view the facts in the light most favorable to the nonmoving party only if there is a "genuine" dispute regarding those facts. Fed. R. Civ. P. 56(c). Given the videotaped recording of the cell extraction, however, the Court does not have to adopt plaintiff's allegations for summary judgment purposes.

\*   \*   \*

[The] [p]laintiff's allegation that he was assaulted during the cell extraction [is]

utterly discredited by the record.

*Knuckles El v. Ordiway*, 1999 WL 993891, at *1 (6th Cir. Oct. 20, 1999):

> Here, the evidence presented raises no genuine issue of material fact. [The] [d]efendants' affidavits each present a similar version of the facts and the videotape supports defendants' account. [The] [p]laintiff refused to follow orders thereby forcing defendants physically to restrain him. It is undisputed that plaintiff received scratches, bruises and a chipped tooth during the incident, however the videotape and plaintiff's own account establish that plaintiff did not receive severe injuries. The force used was *de minimis* and necessary under the circumstances.

*Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992):

> Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. In this case, [the] deputy jailer . . . ordered plaintiff to stop shouting and kicking but he did not obey. The police officers called to enforce this order were entitled to use force in reliance upon the reasonable judgment of the correctional officials.

(internal citation and quotations omitted).

Lentz's cruel and unusual punishment claim lacks merit. Accordingly, Lentz's argument that Jackson, Steward, and Romanowski were deliberately indifferent to his safety, and "contributed to and proximately caused" Loxton, Gregory, Weberg, Oden, Cosby, and Bivens to violate his constitutional rights by failing to resolve his grievance and initiate an investigation with the Internal Affairs Division of the Department of Corrections likewise lacks merit (Dkt. No. 11 at pp. 26-27).

### B. *Deliberate Indifference to Lentz's Serious Medical Needs*

Lentz argues that the failure of Nurse Wells to provide medical care for injuries to his face, broken ribs and "damage to the surrounding area" constitutes deliberate indifference to his serious medical needs.

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against

9

prison officials for "deliberate indifference" to his serious medical needs, because it constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). To succeed on a claim of deliberate indifference, Lentz must satisfy two elements, an objective one and a subjective one. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

### 1. Objective Element

The objective element is satisfied by a showing that Lentz had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).

Lentz did not present sufficient evidence to find his condition constituted a serious medical need. Nurse Wells did not find Lentz's condition mandated treatment, and a review of the video-recording shows that a lay person would not easily recognize Lentz's need for a doctor's attention. Indeed, the recording shows Lentz was not in severe distress (with the exception of a nose bleed and burning eyes); he spoke softly; listened to and understood Loxton's instructions; and, at one point, he was laughing.

Lentz's deliberate indifference claim fails on the first element: he did not have a serious medical need.

### 2. Subjective Element

Moreover, the subjective element requires Lentz to show that Nurse Wells had "a sufficiently culpable state of mind." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)

(citation omitted). "To satisfy the subjective component, [Lentz] must allege facts which, if true, would show that [Wells] subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the inference, and that [she] then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "[Wells'] failure to alleviate a significant risk that [she] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Nor is Lentz entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

>Wells' Affidavit says she:
>
>saw . . . Lentz . . . on October 8, 2011, two (2) days after his initial assessment by Health Care staff on October 6, 2011 (in Segregation) . . . Lentz . . . showed no signs or symptoms of broken ribs during that examination. Health Care Staffs[sic] see prisoners in Segregation on a daily basis. During the entirety of . . . Lentz . . . being in Segregation, there are no other reports of injury by [Lentz], concerning his ribs . . . . Lentz . . . did not report or express any difficulties in relation to having "broken ribs" to any other Health Care staff at any other time according to NextGen, electronic medical record, documentation.

(Dkt. No. 34, Ex. 6 at ¶4). Lentz does not present any evidence to support his allegation that he did, in fact, have "signs or symptoms of broken ribs," or dispute Wells' statement that he did not

11

complain of broken ribs to any other health care staff. Moreover, on August 5, 2013, this Magistrate Judge ordered the MDOC to conduct X-rays of Lentz's ribs. An X-ray was taken and the radiology report – provided to Lentz and the Court – was negative: "[n]o displaced fractures . . . and no intrinsic or metabolic osseous abnormality [were] apparent."

This Magistrate Judge finds that Lentz's deliberate indifference claim likewise fails on the second element; Nurse Wells examined Lentz and did not subjectively infer that he was at a substantial risk of harm.

### C. Retaliation Claims

The Sixth Circuit recognizes three elements to a retaliation claim:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted).

#### 1. Transfer from MRF to a Level Five Prison

Lentz argues that – within four months – he was transferred from MRF to a level five prison in retaliation for filing grievances.[14] The timing of events is appropriate circumstantial evidence. *Thaddeus-X*, 175 F.3d at 399. However, the Sixth Circuit has been reluctant to find that evidence of temporal proximity between filing grievances and the adverse action, alone, establishes retaliatory motive. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010); *see also*

---

[14]Filing grievances constitutes protected conduct. *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) ("[a] prisoner has a First Amendment right to file grievances against prison officials, if the grievances are not frivolous") (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).

*Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010):

> In analyzing the facts in temporal proximity cases, we have always looked to the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn. We have found that the temporal proximity between . . . filing . . . grievances and the [adverse action] provides some circumstantial support for a causal connection but have been reluctant to find that such evidence without more can demonstrate that the filing of grievances was a substantial or motivating factor.

(internal citations and quotations omitted).

Lentz does not allege evidentiary facts – besides temporal proximity – to support a retaliatory motive. Lentz also does not specify the date of the grievance that allegedly caused the transfer, the content of the grievance, or the defendant who was responsible for the transfer. As such, this retaliation claim should be dismissed.

### 2. Modified Access Status

MDOC Policy Directive 03.02.130HH provides:

> A prisoner . . . who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language . . ., or is found guilty of misconduct for filing an unfounded grievance . . . *may have access to the grievance process limited by the Warden or [Field Operations Administration ("FOA")] Area Manager* for an initial period of not more than 90 calendar days. If the prisoner . . . continues to file such grievances while on modified access, *the Warden or FOA Area Manager may extend the prisoner's . . . modified access status for not more than an additional 30 calendar days for each violation*. In [Correctional Facilities Administration], a recommendation to place a prisoner on modified access shall be submitted only by the Grievance Coordinator and shall include a list of the grievances forming the basis for the recommendation and the reason for the recommendation.

(Dkt. No. 34, Ex. 7 at pp. 11-12) (emphasis added). Lentz argues that Heyns extended the time he was placed on modified access status in retaliation for filing grievances.[15] As outlined in the

---

[15] Lentz also alleges that he was retaliated against at the Saginaw Correctional Facility ("SRF") and the Marquette Branch Prison ("MBP") when he was tied to a bed on numerous

Policy Directive, the Warden or the FOA area manager – not the Director – is responsible for placing prisoners on modified access status. Lentz's retaliation claim fails because the alleged constitutional violation was not a result of Heyns' conduct. *Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *15 (E.D. Mich. July 23, 2013) ("[l]iability of each individual defendant must be based upon that defendant's personal involvement. Thus, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)).

Further, Lentz cannot establish the adverse action element of his retaliation claim. *See Wappler v. Huss*, No. 1:08-cv-629, 2009 WL 3055202, at *8 (W.D. Mich. Sept. 18, 2009) ("[e]ven if [p]laintiff could establish the first two elements of the analysis, he has failed to demonstrate that he suffered a sufficiently adverse action. As the Sixth Circuit has observed on several occasions, being placed on modified access status in response to filing administrative grievances would not deter a person of ordinary firmness from filing non-frivolous grievances") (citing *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. Nov. 17, 2005); *Walker v. Michigan*

---

occasions, placed in a cell with feces, starved and dehydrated, denied his legal property for 18 days, moved to a different housing unit for five days and denied the basic necessities of life, denied heat, and denied the Department's Security Classification Committee reviews (Dkt. No. 11 at pp. 21-23 (CM/ECF)). This Magistrate Judge assumes these claims are against Heyns; no other defendant had any affiliation with SRF or MBP. But, Lentz's claims are unsubstantiated. For example, he does not specify the protected conduct he engaged in before Heyns allegedly engaged in adverse action, or the causal connection between the protected conduct and the alleged adverse action. As such, this Court should decline to address these arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

*Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. April 1, 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001)).

This retaliation claim should likewise be dismissed.[16]

### D. Qualified Immunity

In the alternative, Defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary acts. *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Daugherty v. Campbell*, 935 F.2d 780, 783-84 (6th Cir. 1991). As noted by the Sixth Circuit in *Daugherty*, "[q]ualified immunity entitles its possessor to immunity from suit rather than a mere defense to liability." *Id.* at 783 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, government actors have the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992).

Government actors may lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *Anderson*, 483 U.S. at 638-39; *Harlow*, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).

---

[16]Because this Magistrate Judge finds that Lentz's retaliation claims lack merit, his argument that Heyns violated his First (retaliation), Eighth (cruel and unusual punishment), and Fourteenth (due process) Amendment rights by failing to implement proper policies and procedures – which allowed departmental staff to retaliate against him – likewise lacks merit.

Lentz bears the burden to defeat this immunity, which is a legal issue to be decided by the Court. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). A court must consider: (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and, (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are not required to address these questions in sequential order. *Pearson v. Callahan,* 555 U.S. 223 (2009).

"When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our [C]ircuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our [C]ircuit, and finally to decisions of other circuits." *Daugherty*, 935 F.2d at 784 (citations and quotation marks omitted). The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. . . ." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (quotation marks omitted). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. Although it need not be the case that "the very action in question has previously been held unlawful . . .[;] in the light of pre-existing law the unlawfulness must be apparent." *Id.* Immunity applies if reasonable officials could disagree as to whether the conduct violated Lentz's rights. *McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996). However, the doctrine offers no protection to "the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In light of the above analysis, this Magistrate Judge finds Defendants should alternatively

16

be entitled to qualified immunity; their actions were not objectively unreasonable in light of clearly established law.

### E. State-Law Claims

Lentz alleges state-law claims of assault and battery against Loxton, Gregory, Weberg, Oden, Cosby, and Bivens; and, negligence against Nurse Wells.

Even if the Court finds that Lentz has plead viable state-law claims, "district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if[] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008) (recognizing it is within a court's discretion to determine whether to continue to exercise supplemental jurisdiction over any remaining state-law claims when: (1) a court's subject matter jurisdiction is predicated on federal question jurisdiction; and, (2) all federal claims are dismissed). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations and internal quotations omitted). Because all of Lentz's federal claims lack merit, the Court should decline to exercise supplemental jurisdiction over Lentz's state-law claims.

### V. CONCLUSION

Because the restraint team's use of force was reasonable and necessary to restore discipline; the non-participating supervisory personnel cannot be vicariously liable; and, Nurse Wells was not deliberately indifferent to Lentz's medical needs, this Magistrate Judge **RECOMMENDS** that Loxton, Gregory, Oden, Cosby, Wells, Romanowski, Heyns, Jackson,

Steward, and Weberg's motions for summary judgment be **GRANTED** and Lentz's claims be **DISMISSED WITH PREJUDICE** as to those Defendants as well as Bivens.[17]

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

---

[17]Lentz's motion for "Heyns and his agents" to waive loss of privileges sanctions (Dkt. No. 83) should be **DENIED**. *See Dayson v. Caruso*, No. 2:12-cv-455, 2013 WL 1857445, at *5 (W.D. Mich. May 2, 2013) ("maintaining security, order, and discipline are essential goals of a corrections system [and] prison officials are accorded wide latitude in the adoption and application of prison policies and procedures") (citing *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979)). Finally, this Magistrate Judge rejects Lentz's argument that the video-recording should be inadmissable as a sanction for the reasons stated in its October 20, 2013 Order (Dkt. No. 103).

                                        s/Mark A. Randon
                                        MARK A. RANDON
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  November 6, 2013

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, November 6, 2013, by electronic and/or first class U.S. mail.*

                                        *s/Eddrey Butts*
                                        *Case Manager to Magistrate Judge Mark A. Randon*