UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY LENTZ,

                Plaintiff,

v.

                                          Case Number 12-12037
                                          Honorable David M. Lawson
JOHN LOXTON, F/N/U GREGORY, F/N/U      Magistrate Judge Mark A. Randon
WEBERG, F/N/U ODEN, F/N/U COSBY,
F/N/U BIVENS, F/N/U KUPKE, BETTINA
J. WELLS, F/N/U JACKSON, DARRELL
STEWARD, KENNETH ROMANOWSKI,
and DANIEL H. HEYNS,

                Defendants.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING
PLAINTIFF'S VARIOUS MOTIONS, AND DISMISSING COMPLAINT**

The matter is before the Court on the plaintiff's objections to the Magistrate Judge Mark A.

Randon's latest report recommending that the Court grant the motions for summary judgment by

several of the defendants and that the case be dismissed against all defendants. The plaintiff, a

Michigan prisoner, filed this case *pro se* alleging violations of his constitutional rights arising from

the defendants' use of force when removing him from his cell after he refused to stop kicking his

cell door and his subsequent transfer to a higher-level security prison. The plaintiff alleges that the

force was excessive and intended as punishment, and the transfer was in retaliation for filing

grievances. The case was referred to Magistrate Judge Mark Randon for general pretrial

management. Thereafter, the defendants filed motions for summary judgment. Judge Randon filed

a report on July 31, 2013 recommending that the motions be granted. On September 13, 2013, the

Court vacated the report and recommendation and sustained the plaintiff's objection in part because

he was not given an opportunity to view the videotape of the incident, on which the defendants and magistrate judge relied for the motion arguments. That defect has been remedied, and on November 6, 2013, Judge Randon issued a second report recommending that the Court grant summary judgment to defendants Weberg, Gregory, Jackson, Loxton, Steward, Heyns, Wells, Cosby, and Romanowski. The plaintiff filed objections to that report and recommendation, and the matter is now before the Court for *de novo* review. The plaintiff has filed a sheaf of other motions, which the Court will address below.                                       I.

The events in the case began on October 6, 2011, when the plaintiff created a disturbance by kicking his cell door. Shortly thereafter, some of the defendants — prison guards — attempted to remove him from his cell. The plaintiff resisted, and the defendants used force, which included pepper spray and striking blows, and ultimately succeeded in extracting the plaintiff from his cell. The plaintiff apparently filed several grievances concerning the altercation and subsequent medical attention he received.

Defendant Bivens filmed the cell extraction. According to the magistrate judge's report, the video shows that officers did not immediately resort to chemical agents or physical force. Defendant Loxton twice ordered the plaintiff to step to the door to be restrained. The plaintiff did not comply. Defendant Loxton then administered chemical spray into the plaintiff's cell for approximately seven seconds. On four more occasions, defendant Loxton ordered the plaintiff to step to the door. The restraint team then entered the cell, restrained the plaintiff, and removed him from his cell within 98 seconds. The defendants took the plaintiff to the segregation shower, removed his contaminated clothing, provided him with a clean jump suit, and placed him in ambulatory restraints. The video

shows that the defendant's nose was bleeding. Defendant Steward, the deputy warden, authorized officers to remove the restraints approximately nineteen hours later.

Defendant Kupke, a nurse, evaluated the plaintiff several hours after he received the gas. She noted no signs of respiratory distress and no bruising around his restraints. Defendant Wells, another nurse, evaluated the plaintiff two days after this assessment and concluded that the plaintiff exhibited no signs or symptoms of broken ribs.

Approximately four months after the cell extraction, the Michigan Department of Corrections (MDOC) transferred the plaintiff from a level two prison to a level five maximum security prison.

The plaintiff's complaint alleges claims against six members of the restraint team at the Macomb Correctional Facility, two nurses, the warden and deputy warden, and the Director of the MDOC alleging violations of state law and his constitutional rights under 42 U.S.C. § 1983. The plaintiff filed an amended complaint on June 18, 2012 and, after the magistrate judge issued his report and recommendation, a second amended complaint was filed on August 29, 2013.

All of the defendants except nurse Kupke were served and answered the complaint. Kupke has not been served. Defendants Loxton, Gregory, Oden, Cosby, Wells, Romanowski, Heyns, Jackson, and Steward moved for summary judgment. The bases for the motion were thoroughly discussed by the magistrate judge.

Judge Randon recommended that the motion be granted. He addressed each of the plaintiff's claims and the defenses advanced by the MDOC employees.

### A. Cruel and Unusual Punishment

Six of the eleven defendants were part of the restraint team. The plaintiff argues that those defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment

when they used excessive force during the cell extraction.  The magistrate judge reviewed the videotape of the cell extraction and concluded that the restraint team used reasonable force, in good faith, to restore discipline.  The magistrate judge concluded that the plaintiff's conduct necessitated the use of force, that the videotape showed that the use of force was necessary to secure plaintiff's submission, and that the defendants took the plaintiff to the segregation shower immediately after restraint and provided him with a clean jump suit.  Therefore, the magistrate judge concluded that the undisputed facts did not support the elements of a cruel and unusual punishment claim under *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), and the claim lacked merit, *see Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992).  Because the plaintiff's claim lacked merit, the magistrate judge concluded that plaintiff's arguments that defendants Jackson, Steward, and Romanowski were deliberately indifferent to his safety, and "contributed to and proximately caused" defendants to violate his constitutional rights, lacked merit as well.

### B.  Deliberate indifference to Lentz's serious medical needs

Defendants Kupke and Wells are the nurses that treated the plaintiff after the cell extraction. Lentz alleges that Wells acted with deliberate indifference by failing to treat the plaintiff's broken ribs and surrounding area.  Because defendant Kupke has not been served, the recommendation does not address the allegations against her.  The magistrate judge noted that there are objective and subjective elements to a deliberate indifference claim under the Eighth Amendment and that the plaintiff failed to satisfy either element of deliberate indifference.

The magistrate judge concluded that the plaintiff did not meet the objective requirement of a deliberate indifference claim, which requires evidence of a "serious medical need."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).  The magistrate judge reviewed the videotape and concluded

-4-

that the plaintiff did not exhibit severe distress (with the exception of a bloody nose and burning eyes), laughed at one point, listened to and understood defendant Loxton's instructions, and that a lay person would not easily recognize the plaintiff's need for a doctor's attention.

The magistrate judge also concluded that defendant Wells did not meet the subjective component of a deliberate indifference claim because he did not present evidence that "would show that [the defendants] subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The magistrate judge found that the plaintiff did not present any evidence to dispute the defendant's affidavit that he did not complain of broken ribs and showed no signs or symptoms of broken ribs during his examination. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (courts are reluctant to second guess medical judgments when a dispute is over the adequacy of the medical attention that the prisoner received). Therefore, the magistrate judge also concluded that the plaintiff failed the second element of the test for deliberate indifference.

## C. Retaliation Claims

The plaintiff alleged that the defendant retaliated against him for filing grievances when the prison transferred him from a level two prison to a level five maximum prison and modified his access status. The magistrate judge recommended that the Court dismiss the claim after examining the three elements to a retaliation claim set out in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

-5-

1.  Transfer to Level Five Prison

The magistrate judge found that, aside from temporal proximity, the plaintiff did not allege evidentiary facts to support a retaliatory motive for the transfer from a level two prison to a level five prison.  Nor did the plaintiff specify the date of the grievance that led to the transfer, the content of the grievance, or the defendant responsible for the transfer.  Because the Sixth Circuit is "reluctant to find that [temporal evidence] without more can demonstrate" retaliatory motive, the magistrate judge recommended that the Court dismiss the claim.  *See Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010).

2.  Modified Access Status

The plaintiff alleged that Heyns, the Director of the MDOC, extended the time he was placed on modified access status in retaliation for filing grievances.  MDOC policy provides that the Warden may limit access to the grievance process if a prisoner files an excessive number of vague, duplicative, or non-grievable issues or is found guilty of misconduct for filing an unfounded grievance.  The magistrate judge recommended that the Court dismiss the retaliation claim against Heyns because the plaintiff failed to demonstrate that Heyns's conduct caused a constitutional violation and because the plaintiff failed to meet the adverse action element of his retaliation claim.

E.  Qualified Immunity

The magistrate judge recommended in the alternative that the Court grant summary judgment because the defendants' actions are not objectively unreasonable in light of clearly established law.  *See Saucier v. Katz*, 533 U.S. 194  (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009).

-6-

### F.  State-Law Claims

Plaintiff alleged state law claims of negligence against defendant Wells and assault and battery against defendants Loxton, Gregory, Weberg, Oden, Cosby, and Bivens.  The magistrate judge recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims because all of the plaintiff's federal claims lacked merit.  *See* 28 U.S.C. § 1367(c)(3).

### II.

The plaintiff filed timely objections to the latest report.  Objections to a magistrate judge's report and recommendation are reviewed *de novo*.  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge . . . may accept, reject, or modify, in whole or in part, the findings to which objection is made."  28 U.S.C. § 636(b)(1).  The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement."  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general."  *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

### A.  Videotape

The plaintiff asserts his dissatisfaction with his opportunity to view the videotape because he never received a copy of the tape, prison officials did not permit him to use a writing utensil while watching the video, and prison officials only selectively wrote down what he requested them

to note.   The defendants insist, however, that after the Court vacated the earlier report and recommendation, they permitted Lentz to view the videotape "as many times as desired . . . and to replay certain portions if requested."  Defs.' Resp. Mot. Sanctions at 6.  They say that Lentz viewed the videotape on September 23, 2013 and October 3, 2013, after which Lentz informed prison staff that he was satisfied.

The Court is convinced that officials provided Lentz with a meaningful opportunity to view the videotape of the incident.  The defendants' affidavit says as much, and Lentz cites extensively from the videotape in his objections.  Those objections, for example, include direct quotations from the videotape and when those statements were said.  The Court's concern over the plaintiff's right to see the evidence presented to the Court — a concern that caused the Court to vacate the last report and recommendation — has been dispelled.

### B.  Bias

Except for some vitriol and a few additional disrespectful jabs at the magistrate judge, the plaintiff's objections to the latest report parrot his objections to the earlier report the Court vacated last September.  The plaintiff argues that the magistrate judge is biased, contending that he "has manipulated and completely taken everything way out of context . . . [and] has a history of manipulating the case . . . [and] has clearly shown **PERVASIVE BIAS**."   He protested the magistrate judge's establishment of a "Nazi Gestapo" and "Police State."   He argued that the magistrate judge is unfavorably disposed to the plaintiff.  In particular, the plaintiff expressed concern that the magistrate judge never acknowledged he is a severely mentally ill person with a severe mental health history who was found guilty but mentally ill.  He also objected to the

-8-

magistrate judge determining the outcome of his case at the summary judgment stage, rather than a jury.

These allegations are conclusory and lack factual and legal support.  Moreover, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts."  *Alexander v. CareSource, Inc.*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  The magistrate judge concluded that the plaintiff has not made that showing, and the Court agrees.

## C. Cruel and unusual punishment claim

The plaintiff objected to the magistrate judge's factual findings concerning the plaintiff's Eighth Amendment challenge.  He argued that the restraint team did not use reasonable force, in good faith, to restore discipline.  Although force may be used to maintain order, the plaintiff argued that the officers used force to punish or retaliate against him.  He argued that he acted in self-defense by kicking the door.  He did so in protest against the officer's false charges, denying him his property, refusing to provide him with legal materials, and sexually harassing him, among other indignities.  He also claimed that he did not kick his cell door at the time of the misuse of force, but

-9-

had stopped two hours prior to the officers entering his cell. The Critical Incident report, attached as Exhibit 6 to defendants' motion for summary judgment, suggests otherwise.

There is some support in the cases for the plaintiff's position: if there is a *material* factual dispute about when plaintiff stopped kicking his door in relation to the time force was used, summary judgment would be inappropriate. In *Thompson v. Zimmerman*, 350 F.3d 734 (8th Cir. 2003), the Eighth Circuit stated:

> We conclude that Thompson's testimony, if believed, would establish a constitutional violation. According to Thompson, he was sitting on a bench, with his hands on his legs, looking down, when Zimmerman and Peninger entered his cell and beat him. Thompson was not yelling or kicking the walls or the doors, although he had done so previously, and thus there would have been no basis for a reasonable officer to believe force was needed at that time to prevent Thompson from endangering himself or others.

*Id.* at 735 (internal citations omitted).

Similarly, the court in *Card v. D.C. Dep't of Corr.*, 2:00CV631, 2005 WL 2260167 (E.D. Va. Sept. 13, 2005), partially denied summary judgment because the record did not support a need to control the plaintiff:

> Defendants do not assert that plaintiff continued to kick his cell door. With the possible exception of February 1, 2000, there were significant lapses of time between plaintiff's disruptive behavior and the application of restraints. On May 17, 1999, plaintiff was kicking his door at 8:49 a.m. and not placed into restraints until 10:05 a.m. On May 27, 1999, plaintiff was banging on his door at 12:30 p.m. and placed in restraints at 1:45 p.m. On June 17, 2005, plaintiff had an altercation with Hawes and Scott at 2:50 p.m. The nurse observed plaintiff sitting on his bed at 4:20. Plaintiff was placed in restraints at 5:09 p.m. On November 10, 1999, plaintiff was kicking his cell door at 8:30 a.m. Plaintiff was not placed in restraints until 10:30. In each of these cases the threat posed by plaintiff's behavior had subsided for more than an hour before restraints were applied to "control" plaintiff.

*Id.* at *7

-10-

This case, however, is different.  The plaintiff admits that he was kicking his cell door on October 6, 2011, although he says he stopped a few hours before the officers tried to take him from his cell.  The plaintiff is mentally ill, a condition that he himself acknowledges.  He was found guilty but mentally ill of his crime, a verdict that in Michigan has no penological or correctional significance.  *See People v. Ramsey*, 422 Mich. 500, 521, 375 N.W.2d 297, 305 (1985) (Levin, J., dissenting) (observing that "[a]ny treatment provided an offender found guilty but mentally ill is not a consequence of the special finding that, at the time the offense was committed, he was mentally ill, but rather of a determination that the offender at some time after his imprisonment is mentally ill, is treatable, and there are resources available to provide treatment, a determination made by physicians and other professionals without regard to, and uninfluenced by, the jury's special finding of mental illness").  The evidence suggests that he was kicking his cell door as a protest against past poor treatment by prison officials, in an apparent attempt to attract attention.  He succeeded, although, according to his version, not immediately.  The question Lentz's complaint presents is whether the defendants — the extraction team — used force and restraints to punish Lentz for being a difficult prisoner, or, on the other hand, whether the force was applied in a good faith effort to maintain discipline or restore order.

The institutional response to Lentz's disruptive conduct — whenever it may have occurred — was to remove him from his cell.  No one can say that was unreasonable, let alone punitive.  Removing the prisoner from his cell is but a first step toward several possible responses, which could include discipline or treatment.  But Lentz refused to come out.  It is well established that officers may use force to restrain uncooperative inmates.  *Knuckles El v. Koskinen*, 156 F.3d 1230, 1998 WL 415847, at *2 (6th Cir. 1998) (table) ("Plaintiff was sprayed with gas only after he refused

-11-

to allow Officer Beesley to place him in restraints.  Under these circumstances, the defendants acted reasonably in spraying gas at plaintiff.").

In *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992), the Sixth Circuit refused to second-guess the defendants' use of force to quiet the plaintiff, an inmate at Woodford County jail. Caldwell kicked his door and shouted for the jailer for seven hours.  The deputy jailer told the plaintiff that he would be placed in a straitjacket if he continued shouting and kicking the cell door. After the plaintiff refused to stop, an officer used a stun gun to quiet the plaintiff.  The plaintiff argued that officers should have used a less dangerous alternative to the stun gun because he did not pose a danger to himself or others and his actions did not incite other prisoners.  But the court found that "[t]he jail has a legitimate interest in having inmates obey orders. . . .[The] deputy jailer . . . ordered [plaintiff] to stop shouting and kicking but he did not obey. The police officers called to enforce this order were entitled to use force in reliance upon the reasonable judgment of the correctional officials."  *Id.* at 601 (internal citation omitted).

The plaintiff's argument that a fact issue emerges from his contention that he stopped kicking the cell door hours earlier misses the point.  It is undisputed that the officers were attempting to extract the plaintiff from his cell, and the plaintiff would have none of that.  The defendants used force — they employed chemical agents — only after the plaintiff refused to comply with their orders.  The plaintiff concedes that he resisted restraint.  Pl.'s Obj. Rep. & Rec. at 6.  (Plaintiff was given no option but to self-defend <u>himself</u> and his guaranteed rights out of duress . . . At <u>no time</u> was the force employed by Plaintiff to repel the attacks <u>out of proportion</u> to what is called for . . .").  Therefore, the time when the plaintiff had stopped kicking his cell door is immaterial, because it makes no difference to the assessment of the officers' conduct at the time they ordered the plaintiff

-12-

from his cell. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (holding that a fact is "material" if its resolution affects the outcome of the lawsuit). Irrelevant or unnecessary factual disputes do not create genuine issues of *material* fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). Therefore, summary judgment is appropriate, despite the plaintiff's dispute over the time he stopped his disruptive behavior. Additionally, as the magistrate judge noted, the extraction team did not resort to chemical spray or physical force immediately, but gave the plaintiff an opportunity to be voluntarily handcuffed and removed from his cell.

The plaintiff relies on *Thompson*, but that case is easily distinguishable. The plaintiff in that case alleged facts, if believed, that showed that the defendants beat an unarmed man for no apparent purpose. 350 F.3d at 734. Here, the most the plaintiff alleges is that defendants ordered him to submit to restraint at a time when he thought he no longer needed restraining, and when he refused to comply he was sprayed with chemical agents and placed in ambulatory restraints overnight. "Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Moore*, 968 F.2d 595. Unlike Thompson, "it was plaintiff's own conduct [in refusing to comply with the defendants' orders] which necessitated the use of gas." *Koskinen*, 1998 WL 415847, at *2. Because the defendants are entitled to deference in their choice of response to the prisoner's conduct, *Whitley v. Albers*, 475 U.S. 312, 322 (1986), the Court finds that the plaintiff has not established that the defendants acted with excessive force for the purpose of wantonly inflicting pain.

D. Deliberate indifference to medical needs

-13-

The plaintiff argued that he satisfied the objective and subjective elements of the deliberate indifference claim. He says that the video demonstrates a serious medical need because he is seen with a bloody nose and complained about chest pain and possible injury to his organs. However, the plaintiff's objections are conclusory and lack factual and legal support. They amount to nothing more that a disagreement with the magistrate judge's conclusions, which the Court finds to be correct on this point. *See Spencer*, 449 F.3d at 725.

Moreover, after reviewing the record in this case, it is apparent that the plaintiff cannot demonstrate the objective component of his deliberate indifference claim. *See Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (holding that for an Eighth Amendment claim for deprivation of medical treatment, "[t]he test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component"). To satisfy the objective component, the plaintiff must offer evidence that he had a serious medical need, that is, "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Neither the videotape nor any other evidence offered by the plaintiff shows him suffering from an injury or medical condition that would have called for a doctor's attention. His deliberate indifference claim, therefore, fails.

## E. Retaliation claims

The plaintiff objects to the magistrate judge's recommendations to the retaliation claim for three reasons. First, he argues that he satisfied all three elements prescribed by *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Second, he argues that the magistrate judge did not

consider his allegations of retaliation for other complaints aside from filing grievances. Third, he contends that he alleged other adverse actions aside from being transferred.

Once again, however, the plaintiff's objections are conclusory and lack factual and legal support. The magistrate judge's conclusions are well supported by the record, and on fresh review the Court reaches the same conclusions.

### F.  Qualified immunity

The plaintiff objected to the magistrate judge's recommendations concerning qualified immunity. He does not enumerate why and only restates the test for qualified immunity.

The defense of qualified immunity is appropriately asserted in this case. Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of this defense is to strike a balance that "accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quotation marks and citation omitted). The defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

The Eighth Amendment bars the use of excessive force against incarcerated persons. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). To determine whether the force used could be

-15-

considered excessive, the Court examines whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically for the purpose of causing harm. *Ibid.*; *see Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Although the nature of the prison setting requires contact between corrections officials and prisoners that might be considered actionable at common law, such contact violates the Eighth Amendment only if it constitutes the "unnecessary and wanton infliction of pain." *Pelfrey*, 43 F.3d at 1037.

In this case, the officers were responding to an admittedly uncooperative prisoner who was to be removed from his cell. The evidence in the record shows that they used only that degree of force that was necessary to achieve that goal. That goal was not "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). And the prison personnel are entitled to "wide latitude" in implementing prison policies. *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Viewing the undisputed facts, the Court concludes that the defendants did not violate the plaintiff's clearly-established constitutional right against cruel and unusual punishment at the time of the cell extraction.

### G. Claims against Nurse Kupke

Defendant Kupke has not been served, and therefore the magistrate judge did not address the plaintiff's claims against him. Kupke was the medical provider who treated the plaintiff after he was removed from his cell. Proceeding against that defendant would be futile, because the plaintiff cannot establish the objective component of his deliberate indifference claim. Therefore, the Court will dismiss the complaint against him.

### H. State-law claims

-16-

The plaintiff argued that the state-law claims should not be dismissed since "plaintiff argues that all federal-law claims should not be dismissed." The Court, however, finds no merit to the plaintiff's federal claims, and therefore will overrule the objection to dismissing the state-law claims without prejudice.

### III.  Remaining motions

The plaintiff has also filed a number of additional motions. On October 9, 2012, the plaintiff filed a motion for summary judgment in response to the defendants' motion for summary judgment [dkt. #43]. The Court will deny the plaintiff's motion for the same reasons it will adopt Magistrate Judge Randon's second report and recommendation: the plaintiff is not entitled to relief as a matter of law.

Additionally, the plaintiff filed a motion to take judicial notice [#81] that the plaintiff has been "railroaded" by the defendants during the grievance process. Rule 201 of the Federal Rules of Evidence states that

> [t]he court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Judicial notice is only appropriate if "the matter [is] beyond reasonable controversy . . . ." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012). For instance, a trial court may take judicial notice of established geographical facts and statutes of the United States, *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964), as well as administrative regulations, *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002). Whether the defendants "railroaded" the plaintiff is not a matter

beyond reasonable controversy.  Although the grievances are considered part of the record in this case, they do not furnish evidentiary support for the plaintiff's claims.

The plaintiff also filed a motion for a preliminary injunction [dkt. #83] requesting the Court to "waive" his loss of privileges sanctions.  The plaintiff says that defendant Heyns and his agents have retaliated against him by filing numerous false prison misconduct allegations against him. Magistrate Judge Randon recommended that the Court deny the plaintiff's motion because "maintaining security, order, and discipline are essential goals of a corrections system [and] prison officials are accorded wide latitude in the adoption and application of prison policies and procedures."  *Dayson v. Caruson*, No. 12-cv-455, 2013 WL 1857445, at *5 (citing *Bell*, 441 U.S. at 546-47).  The Court will adopt the magistrate judge's recommendation for this reason and because the plaintiff's retaliation claim lacks merit.

On August 29, 2013, the plaintiff filed a motion to amend his complaint [dkt. #93].  The plaintiff's proposed pleading would add new claims under the Americans with Disabilities Act and provisions under the Rehabilitation Act, would add the first names of the defendants, and would make minor changes to the introduction, statement of facts, claims for relief, and relief requested. The plaintiff alleges that the defendants discriminated against him because of his mental illness and retaliated against him for protesting his handling.

"Although [Federal] Rule [of Civil Procedure] 15's amendment standards are liberal, the Rule does not give parties the right to amend."  *Moncier v. Jones*, 13-5618, 2014 WL 463463 (6th Cir. Feb. 6, 2014) (internal citation omitted).  When considering whether to grant leave to amend a complaint, the court considers "'[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, ... and futility . . . .'"  *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998)

(quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994)). The Court will deny the plaintiff's motion because of undue delay in filing the motion and because the plaintiff's claim is futile.

The plaintiff filed his motion to amend more than a year after filing his original complaint, more than nine months after the defendants filed their motion for summary judgment, and nearly a month after the magistrate judge filed his report and recommendation. Moreover, the plaintiff filed an amended complaint once already and has offered no explanation for the delay.

But even if the plaintiff could justify the delay, his claim is futile. Title 42 of the United States Code section 12132 provides:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Title 42 of the United States Code section 12203(a) state:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

There is no evidence that the defendants discriminated or retaliated against the plaintiff because of his mental illness. Instead, the videotape demonstrates that the defendants restrained the plaintiff after he created a disturbance by kicking his cell door and refused to cooperate with correction officers. Nor is there any evidence that the defendants modified his access status because of his mental illness or for filing grievances.

On September 9, 2013, the plaintiff filed a motion for relief and to modify the magistrate judge's order to conduct X-rays [dkt. #96]. On August 5, 2013, Judge Randon ordered the Michigan Department of Corrections to X-ray the plaintiff's ribs because the plaintiff accused the defendants of breaking his ribs. The plaintiff argues that medical officials at the Michigan Department of

Corrections should not X-ray his ribs because of a potential conflict of interest. The plaintiff implied that the X-ray results could not be trusted because his lawsuit alleged that several nurses at the Michigan Department of Corrections were deliberately indifferent to his medical needs. The Court will deny the plaintiff's motion. Even if there was a conflict of interest, Lentz has provided no evidence that the X-ray results themselves cannot be trusted. Those results apparently show that Lentz's ribs are normal. Rept. & Rec. at 4 n.9.

On December 26, 2013, the plaintiff filed a motion for a temporary restraining order [dkt. #113], alleging that the defendants retaliated against him on December 17, 2013 for filing grievances against prison officials. The plaintiff mailed the Court an item that apparently was the bandage that was placed on his "left-hand middle finger" and his right forearm.

The Court will deny the plaintiff's motion because the plaintiff has not exhausted his administrative remedies. Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies prior to bringing a § 1983 action with respect to prison conditions, even if the state administrative process does not allow the specific type of relief sought by the prisoner. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (holding that the exhaustion requirement of the Prison Litigation Reform Act (PLRA) applied to an inmate's claims that he was beaten by corrections officers without justification). Although the plaintiff indicates that he filed a grievance on December 20, 2013, filing a step 1 grievance is only one step in the administrative grievance process. That is insufficient. *See Rodgers v. Hawley*, 14 F. App'x 403, 416 (6th Cir. 2001).

IV.

The Court finds that the plaintiff's objections to the magistrate judge's report and recommendation lack merit. Moreover, the Court finds that the plaintiff cannot prevail on his claims

against the unserved defendant, Nurse Kupke.  The plaintiff's additional motions lack merit and provide him no basis for relief.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #105] is **ADOPTED**, and the plaintiff's objections [dkt. #112] are **OVERRULED**.

It is further **ORDERED** that the motion for summary judgment by defendants Weberg, Gregory, Oden, Jackson, Loxton, Steward, Heyns, Wells, Cosby, and Romanowski [dkt. #34] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. #43], motion to take judicial notice [#81], motion for a preliminary injunction [dkt. #83],  motion to amend the complaint [dkt. #93], motion for relief and to modify the Magistrate's order to conduct x-rays [dkt. #96], and motion for a temporary restraining order [dkt. #113] are **DENIED**.

It is further **ORDERED** that the plaintiff's federal claims are **DISMISSED WITH PREJUDICE** against all defendants, and his state-law claims are **DISMISSED WITHOUT PREJUDICE** as to all defendants, and the case is **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 26, 2014

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 26, 2104.

s/Shawntel Jackson
SHAWNTEL JACKSON